Rhyner, Administrator, Respondent, vs. Hartl, Appellant.

*January 13—February 10, 1942.*

590

592

For the appellant there were briefs by *Pors & Pors* of Marshfield, and oral argument by *Charles M. Pors*.

For the respondent there was a brief by *Brazeau & Graves* of Wisconsin Rapids, and oral argument by *R. B. Graves*.

FAIRCHILD, J.  The findings concerning fraud and misrepresentations on which the judgment below were based are against the great weight and clear preponderance of the evidence.  The record is barren of evidence either of active or constructive fraud practiced by appellant or of any act on the part of appellant that can be held capable of misleading respondent as to the value of the property or the advisability of selling the interest of the deceased when he did.

In order to have a cause of action there must be a right in the plaintiff and a wrongful invasion of that right by the defendant.  *Van De Yacht v. Holland* (1935), 217 Wis. 455, 457, 259 N. W. 604.  This action is by an administrator of an estate for an accounting for profits alleged to have been made by defendant in breach of fiduciary duties owed to the American National Bank of Marshfield.

Respondent's decedent died in 1934, a resident of the state of Michigan, owner of a one-third interest in a tract of timberland lying in Sawyer county.  Ancillary probate proceedings were had in Wood county, and plaintiff was appointed ad-

ministrator of the estate in the Wisconsin proceedings on January 30, 1936. Prior to his death three judgments had been obtained against the decedent: One on November 16, 1932, by the Stratford State Bank in the sum of $3,424.22; one on May 16, 1933, by the American National Bank of Marshfield, in the sum of $5,574.21; and one on May 16, 1933, by the First National Bank of Stevens Point, in the sum of $4,835.24. Transcripts of all three judgments were filed in the circuit court of Sawyer county where the timber tract in question was located. Execution was issued by the Stratford State Bank in October, 1935, and the interest of Robert Connor was sold by the sheriff to the cashier of the creditor bank for the amount due on the judgment, a certificate of sale being issued therefor. The judgments of the other two banks above mentioned were filed as claims against the estate of Robert Connor.

The American National Bank of Marshfield, of which defendant Hartl had been a director, was closed on March 4, 1933. Fordyce, who had been appointed receiver for this bank· by the comptroller of currency, sought to redeem the timberland covered by the certificate of sale before mentioned or to purchase such certificate in order to protect the judgment of the American Bank. Authority to take either of these courses was refused the receiver by the comptroller of currency. Fordyce then sought to get either the Citizens National Bank, which had been organized after the closing of the American Bank and of which Hartl was president, or the defendant Hartl to purchase the certificate. Both refused. Sometime later, in October, 1936, Fordyce again spoke of the judgment to Hartl who then made an offer of $3,500. This offer was accepted by the Stratford State Bank, and the certificate of sale and an assignment thereof, indorsed in blank, were sent to the Citizens National Bank. On November 6, 1936, Hartl purchased the certificate with money withdrawn from his daughter's savings account.

Mr. Fisher, who was the attorney for the Connor estate, was interested in buying the certificate for the closed First National Bank of Marshfield which also was the owner of a one-third interest in the Sawyer county timberland. He had held off from making the purchase, however, because of the fire hazard. After learning of Hartl's purchase of the certificate, Mr. Fisher conferred with Dunegan, president of the First National Bank of Stevens Point, the third judgment creditor, and they decided to arrange to protect their various interests. A meeting was held on November 17, 1936, attended by defendant Hartl; Dunegan, president of the Stevens Point Bank; Fisher, attorney for the estate and the Marshfield Bank; Peters, trustee of the Marshfield Bank; Fordyce, receiver of the American National Bank; and plaintiff administrator. As a result of this conference Dunegan and Hartl consented to join together to purchase the interest of the Connor estate in the timberland for the sum of $6,000. This offer was accepted at the meeting; a formal contract, to be submitted to the court for its approval, was drawn; and after a hearing upon the petition to confirm the sale, the county court on November 24, 1936, authorized the sale. Nearly a year later, October, 1937, the full three-thirds interest was sold for $40,500. Out of the proceeds of this sale Hartl received $8,229.41. The administrator's deed ran to "J. W. Dunegan and L. A. Hartl, Trustee." As first drafted by Fisher the deed ran to "Dunegan, Trustee of the First National Bank of Stevens Point, and L. A. Hartl, as trustee of the American National Bank of Marshfield." The words defining the trusteeship of Hartl were deleted·at his request.

Prior to the meeting of November, 1936, the estate had been inventoried and the three-thirds interest in the timber tract appraised at $25,000. In August, 1936, respondent had filed a petition for the sale of decedent's lands in order to pay debts and administration expenses. After an order

for sale was issued in September, respondent tried to find buyers for his one-third interest but received no offers until the meeting of November, 1936.

Upon this state of facts, respondent brought his action for an accounting to recover secret profits alleged to have been made by appellant which in good conscience belonged to the American National Bank. That bank was a creditor of the estate represented by respondent. The complaint alleges the obtaining of a deed by means of fraud practiced upon the administrator. Unless that fraud exists, the respondent has no cause of action against anyone. Were we to assume that appellant failed in his duty to the American Bank, and that he could be held accountable therefor, it by no means follows that such conduct would give rise to a right of action in the respondent. But we need not explore that field, for the record before us does not suggest any occasion for appellant assuming to act for the bank.

The interest involved was a one-third ownership in a timber tract purchased by decedent, his brother, and another. The difficulties of disposing of an undivided one third would affect a sale price; and, as discussed in the statement of facts, the matter had been permitted, unavoidably no doubt, to run on until a sale by the sheriff was about to ripen into a deed under which the interest would be lost not only to the respondent but would leave outstanding and entirely unpaid judgments filed against the estate. The respondent in administering his office as administrator, and his attorney, were concerned with securing the best price for the timber holding. Neither respondent nor appellant were fully advised as to the value of the land and timber, and neither knew what could be obtained for it nor to whom it could be sold for a satisfactory price. Such knowledge as respondent possessed was based upon an appraisal and discussions with the attorney for the estate. In the effort to salvage something a meeting of some who might be interested was arranged for November 17,

1936. Before that meeting, Mr. Fisher, a lawyer on whose judgment a client would be inclined to rely, had advised respondent that there were about thirty days left to dispose of the property before the estate would lose its entire equity. At the time of that meeting respondent considered that $6,000 represented a reasonable and acceptable price if the property could be sold. At that time, then, there is no doubt that the situation, so far as the estate was concerned, was, as described by Mr. Fisher, "critical." Neither appellant nor anyone else seems to have expressed any opinion as to the value of the holding. There is nothing appearing in the evidence to indicate that appellant had any advantage over others or that he was bound to protect the interest of the seller. Respondent had equal if not superior means of acquiring information to guide him. Aided by an able attorney, and with the knowledge that the interest of the estate was in danger of being cut off, respondent entered into a deal which ended his control over the property and there remains in him no just cause for complaint against appellant.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint with costs.

Fowler, J., dissents.